IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FARM BUREAU PROPERTY &
CASUALTY INSURANCE COMPANY,

    Plaintiff,

v.                                                                        Civ. No. 22-501 KK/JFR

OE TRUCKING d/b/a OE & COMPANY,
OSVALDO ESPARZA, and ANDRAS
SZANTHO,

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER STAYING PROCEEDINGS</u>[1]**

This case stems from a fatal construction accident in which Johnny Newnum was crushed by the gates of a belly dump truck. Mr. Newnum's Estate brought a state-court wrongful death action against Defendants OE Trucking and Osvaldo Esparza ("OE Defendants"), and others. Plaintiff Farm Bureau Property & Casualty Insurance Company is currently defending the OE Defendants in the state-court case under a reservation of rights and has filed this federal declaratory judgment action to resolve whether it has a duty to defend and/or indemnify the OE Defendants under the insurance policy it issued to them. Before the Court are a (1) Motion to Dismiss by Defendant Andras Szantho, who is the Personal Representative of Mr. Newnum's Estate (the "Szantho Motion to Dismiss") (Doc. 6) and (2) Motion for Dismissal or Stay by Defendants OE Trucking d/b/a OE & Company ("OE") and Osvaldo Esparza (the "OE Motion for Dismissal") (collectively, the "Motions"). (Doc. 18.) Having reviewed the parties' submissions, the record, and

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct dispositive proceedings and enter a final judgment in this matter. (Doc. 17.)

1

the relevant law, and being otherwise fully advised, the Court exercises its discretion not to rule on the request for declaratory judgment at this time and stays this case pending resolution of the state court action, or until further order of the Court.

I.     **FACTS AND PROCEDURAL HISTORY**

Farm Bureau issued a Commercial Package Policy ("the Policy") to OE, a sole proprietorship owned by Defendant Osvaldo Esparza. (Doc. 1 at ¶ 11). After a fatal accident, OE and Mr. Esparza, among others, were sued in a wrongful death complaint (the "Wrongful Death Complaint") filed in the New Mexico First Judicial District as *Andras Szantho, Personal Representative of the Wrongful Death Estate of Johnny Newnum v. Mountain State Constructors, OE Trucking dba OE & Company, Osvaldo Esparza, Spades Trucking, LLC, and Mario Mares*, No. D-101-CV-2021-01136 (the "State Case"). (Doc. 1 at 6; Doc. 6 at 1; Doc. 1-2 at 1.)

In the State Case, Mr. Szantho seeks damages based on the following alleged facts. Mountain State Constructors, Inc. ("MSCI") subcontracted with OE to assist with work MSCI was performing under a contract with the New Mexico Department of Transportation ("NMDOT"). (Doc. 1 at 7; Doc. 1-2 at 3.) MSCI recruited OE to deliver paving material for the project and OE "delegated" the task of delivering the paving material to Spades Trucking, LLC ("Spades"). (*Id.*) Mario Mares, the owner of Spades, and the "belly dump truck" he used to deliver the paving material were in violation of numerous Federal Motor Carrier Safety Administration regulations. (*Id.*) Mr. Newnum was an independent contractor hired as a laborer and paid in cash by Mares. (*Id.*) In August 2020, after a NMDOT project manager observed paving materials coming out of the belly dump truck on the road, Mr. Mares and Mr. Esparza "directed" Mr. Newnum to clean it out using a method prohibited by NMDOT regulations. (Doc. 1 at 8; Doc. 1-2 at 6). "Upon information and belief, [Mr.] Esparza and [Mr.] Mares directed Mr. Newnum to be discre[et] while

cleaning the gates so [the NMDOT representative] would not notice the prohibited cleaning method [Mr. Newnum] was using." (*Id.*) As Mr. Newnum was working, Mr. Mares closed the gates of the belly dump truck to hide the use of the prohibited cleaning method. (Doc. 1 at 8; Doc. 1-2 at 7). Mr. Newnum was crushed by the gates and later died from his injuries. (*Id.*)

Mr. Szantho alleges that OE and Mr. Esparza "owed a duty to [Mr. Newnum] to ensure that anyone hired, contracted or recruited to assist with the MSCI contract were in compliance with all applicable statutes, regulations and ordinances and would properly observe all safety precautions to prevent injury or death" and that they breached their duties "when [they] delegated the paving material delivery to . . . Spades Trucking and allowed [Mr.] Mares to deliver paving material to the improvement project." (Doc. 1-2 at 10.) He further alleges that "[w]ith regard to all acts and omissions referred to in [the Wrongful Death Complaint, OE] is responsible for its own, independent negligent acts and omissions as well as the acts and omissions of its employees, members and agents[.]" (*Id.* at 8.)

Farm Bureau received notice of the accident on September 10, 2021, from the insured's agent. (Doc. 1 at 8.) Farm Bureau agreed to defend Mr. Esparza and OE in the State Case under a reservation of rights to affirm or deny coverage, and counsel hired by Farm Bureau entered an appearance on September 21, 2021. (*Id.*; Doc. 18 at 2.) A settlement conference was held in the State Case on April 29, 2022. (Doc. 6 at 7.)[2] The State Case is set for trial in September 2023.

---

[2] The Court takes judicial notice of the docket in the State Case. *See United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) (taking judicial notice of docket information from another court); *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (federal courts may "take judicial notice of adjudicative facts," including documents filed in state court, "at any stage of the proceedings, and in the absence of a request of a party"); *Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (stating that the "state district court docket sheet . . . is an official court record in a related state court case, subject to judicial notice" under Fed.R.Evid. 201).

3

Roughly nine months after it began providing a defense, Farm Bureau filed the present declaratory judgment action against OE, Mr. Esparza, and Mr. Szantho on July 7, 2022. (Doc. 1); *See* 28 U.S.C. § 2201 (the "Declaratory Judgment Act"); Fed. R. Civ. P. 57. In its Complaint, Farm Bureau seeks a declaration that it is not obligated under the Policy to defend Esparza and OE in the State Case or indemnify them for any damages because the belly dump truck is not a "covered auto" under the commercial auto coverage provisions or Auto Medical Payments Coverage Endorsement to the Policy. (Doc. 1 at 9.) It also argues that coverage is barred by exclusions in the commercial general liability and the medical payments provisions of the Policy. (*Id.*) Those exclusions exclude coverage for (1) liability based on "[']bodily injury arising out of the ownership, maintenance, use or entrustment of an auto that is owned, operated by or rented or loaned to any insured['] and (2) medical payments "to a person hired to do work for or on behalf of any insured[.]" (Doc. 1 at 9; 1-1 at 12.)

## II.   DISCUSSION

In the Motions,[3] Defendants first assert that this Court should abstain from exercising its jurisdiction over this matter under *Younger v. Harris*, 401 U.S. 37, 38 (1971). (Docs. 6, 18.) Defendants next argue that this matter should be dismissed or stayed because the factors set forth in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994) ("*Mhoon*") weigh against this Court's exercise of jurisdiction while the State Case is pending. (*Id.*) As explained below, *Younger* does not apply to this declaratory judgment action. However, the Court finds that, on balance, the *Mhoon* factors weigh in favor of this Court staying its hand because facts at issue in

---

[3] In the OE Motion to Dismiss or Stay, OE incorporated the Szantho Motion to Dismiss by reference. (Doc. 18 at 1); D.N.M.LR- Civ. 7.1(a).

the state wrongful death action bear on whether the Policy provides coverage for the claims raised therein.

**A. The Court is Not Required to Abstain Under *Younger*.**

Defendants argue that this Court should abstain from exercising its jurisdiction over this matter under the "*Younger* doctrine," which "provides that a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in 'certain instances in which the prospect of undue interference with state proceedings counsels against federal relief.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 669–70 (10th Cir. 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)); *see Younger*, 401 U.S. at 38; (Docs. 18 at 8–9; Doc. 6 at 8–11.) Plaintiff argues in response that *Younger* applies only under certain circumstances, which are not present here. (Doc. 21 at 9;Doc. 20 at 12.) The Court agrees that *Younger* abstention is neither required nor appropriate in this case.

"The seriousness of federal judicial interference with state civil functions has long been recognized." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603 (1975). However, federal-court abstention "is not in order simply because a pending state-court proceeding involves the same subject matter." *Sprint Commc'ns*, 571 U.S. at 72. Rather, *Younger* and its progeny require abstention only in three "exceptional" categories of cases which include "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id*. at 73 (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 367-68 (1989) (*NOPSI*)); *Huffman,* 420 U.S. 592 (extending *Younger* abstention to state civil proceedings that are akin to criminal prosecutions); *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1 (1987) (extending *Younger* abstention where the exercise of federal judicial power interferes with a State's

5

interests in enforcing the orders and judgments of its courts); *see also Hunter v. Hirsig*, 660 F. App'x 711, 714 (10th Cir. 2016). In considering whether abstention is appropriate or required, the Court is mindful that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant, and should not 'refus[e] to decide a case in deference to the States.'" *Sprint Commc'ns*, 571 U.S. at 73 (quoting *NOPSI,* 491 U.S. at 368). Because this case presents none of the three "exceptional" categories of cases requiring abstention under *Younger*, the Court will not abstain from exercising jurisdiction over this matter during the pendency of the State Case on that basis.

B. **The *Mhoon* Factors.**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "*may* declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a) (emphasis added). "The Supreme Court has long made clear that the Declaratory Judgment Act g[ives] the federal courts competence to make a declaration of rights" but "d[oes] not impose a duty to do so." *Mhoon*, 31 F.3d at 982 (quoting *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). Thus, federal district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) (whether to exercise jurisdiction over declaratory judgment actions "is vested in the sound discretion of the district courts").

The Supreme Court has cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). Therefore, a court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Runyon,* 53 F.3d at 1170 (quoting *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989)).

In *Mhoon*, the Tenth Circuit listed five factors courts should consider in deciding whether to exercise jurisdiction in such circumstances:

[1] whether a declaratory action would settle the controversy;

[2] whether it would serve a useful purpose in clarifying the legal relations at issue;

[3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata";

[4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

[5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)). Courts also consider "the degree of similarity" between the federal and state court proceedings, *City of Las Cruces*, 289 F.3d at 1183, "[b]ut there is no requirement that the state and federal actions be identical, and their similarity is just one of the many considerations a federal court must balance when deciding whether to grant declaratory relief." *Hatton v. Combs*, 793 F. App'x 801, 805 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 1216 (2020). "Ultimately, . . . the issue for the court to decide is simply 'whether the controversy can better be settled in a pending action.'" *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,* 793 F.3d 1177, 1190 (10th Cir. 2015) (quoting *ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir. 1991)). "This is a 'practical' decision, which may turn on any number of nuances[.]" *Predator Int'l, Inc.* 793 F.3d at 1190 (quoting *Runyon*, 53 F.3d at 1170).

In their briefs, both Farm Bureau and Defendants argue that the *Mhoon* factors weigh in their favor. (Docs. 6, 18, 20, 21.) The Court finds that the first two factors weigh in favor of exercising jurisdiction, the third is neutral, and the fourth and fifth factors weigh against exercising jurisdiction.

**1.  The First and Second *Mhoon* Factors Weigh in Favor of Exercising Jurisdiction.**

The first two *Mhoon* factors require the Court to consider whether a declaratory judgment would settle the controversy or serve a useful purpose in clarifying the legal relations at issue. *Mhoon*, 31 F.3d at 983. If a declaratory judgment would likely "resolve the immediate dispute between the parties [it] may tip the scales in favor of exercising jurisdiction." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 982 n.3 (10th Cir. 2012). On the other hand, the scales may tilt the other way if a declaratory judgment would not resolve the dispute between the parties because there are "outstanding claims [between them] in a parallel state court action[.]" *Id*. "Especially relevant [is] whether the state court action would necessarily resolve the issues in the declaratory judgment action." *Id.*

Here, Farm Bureau is not a party in the State Case and there are no legal claims related to the Policy pending in that matter. Hence, declaratory judgment would resolve the immediate coverage dispute between Farm Bureau and Defendants. A declaratory judgment by this Court also would clarify the legal relations between Farm Bureau and Defendants. Thus, these factors weigh in favor of exercising jurisdiction. *See First Nat'l Ins. Co. of Am. v. Xahuentitla*, 439 F. Supp. 3d 1249, 1255 (D.N.M. 2020) (holding that the first and second *Mhoon* factors weighed in favor of exercising jurisdiction under similar facts).

## 2. The Third *Mhoon* Factor is Neutral.

The third *Mhoon* factor asks courts to consider "whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*." 31 F.3d at 983 (citation omitted). In weighing this factor, courts should carefully consider whether "the timing of the federal claim suggests that its main purpose is to delay the state court action or receive a favorable judgment on an issue before the state court has a chance to fully develop the facts." *W. Am. Ins. Co. v. Atyani*, 338 F. Supp. 3d 1227, 1233 (D.N.M. 2018); *see City of Las Cruces*, 289 F.3d at 1189–90 (timing was significant where party filed federal declaratory judgment action shortly after state court rejected its jurisdictional challenges); *Runyon*, 53 F.3d at 1170 (finding no error in the district court's finding of "procedural fencing" where the plaintiff filed the federal action one day before the defendant had promised to file his state action, and both claims involved coverage under the insurance contract).

Defendants have not demonstrated that Farm Bureau filed this lawsuit for an improper purpose. As evidence that Farm Bureau has engaged in "procedural fencing," Defendants point to the fact that Farm Bureau filed this declaratory judgment action approximately nine months after Farm Bureau began providing a defense to OE and argue that Farm Bureau prefers federal court over state court. (Doc. 18 at 7; Doc. 6 at 7.) But neither the timing of the Complaint alone nor such a "preference[] for a particular forum . . . support[s] an inference that [Farm Bureau is] attempting to manipulate the courts." *Essentia Ins. Co. v. Sanchez*, Civ. Civ. No. 13-1223 MCA/KBM, 2014 WL 11512632, at *6 (D.N.M. Sept. 30, 2014); *Atyani*, 338 F. Supp. 3d at 1233 ("[T]he order and timing of filing alone is not enough to show procedural fencing—some allegation of improper use of timing or procedure to manipulate the courts is required"). The Court finds that this factor is neutral on the present record. *See Allstate Fire & Cas. Ins. Co. v. Sharp,* No. CV 18-1049 RB/KK,

2019 WL 4575609, at *5 (D.N.M. Sept. 20, 2019) (concluding "that neither party has successfully shown that the other engaged in procedural fencing" and therefore "[t]he third *Mhoon* factor is neutral").

3. **The Fourth *Mhoon* Factor Weighs Against Exercising Jurisdiction.**

Under the fourth *Mhoon* factor, the Court considers "whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." 31 F.3d at 983 (citation omitted). "This question involves a consideration of whether the matters being heard in the state court action are essential to a determination of the collateral federal action, or whether the issue being raised in the federal declaratory action involves no matter—factual or legal—at issue in the state case." *Spirit Com. Auto Risk Retention Grp. v. GNB Trucking, Inc.*, No. 1:17-CV-00842 WJ/SCY, 2017 WL 5468670, at *2 (D.N.M. Nov. 14, 2017). While the Court may, in a declaratory judgment action, decide "a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues," where "the jury's findings will bear directly on the applicability of [a coverage] exclusion . . . it would be a complete waste of judicial resources for the trial judge in [a declaratory judgment case] to proceed" on that issue. *Kunkel*, 866 F.2d at 1276; *see Blinder, Robinson & Co. v. U. S. S. E. C.*, 692 F.2d 102, 106 (10th Cir. 1982) (stating that the court may "defer or abate proceedings where another suit, involving the identical issues, is pending either in federal or state court, and it would be duplicative, uneconomical and vexatious to proceed"). Thus, a court "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." *Runyon*, 53 F.3d at 1170 (quoting *Kunkel*, 866 F.2d at 1276).

To determine the degree of overlap in factual and legal issues between the two cases, the Court begins with Farm Bureau's Complaint. In its Complaint, Farm Bureau seeks a declaration that it does not have a duty to defend or indemnify OE. (Doc. 1 at 9.) However, the duty to defend and duty to indemnify are "not coterminous." *Safeco Ins. Co. of Am. v. Brindeiro*, No. CV 19-962 JAP/GBW, 2020 WL 2467742, at *3 (D.N.M. May 13, 2020); *see Found. Reserve Ins. Co. v. Mullenix*, 1982-NMSC-038, ¶ 6, 642 P.2d 604, 605–06 ("This jurisdiction recognizes the distinction between an insurer's duty to defend under the terms of an insurance policy and the duty to pay under the terms of the same policy."). An insurer is obligated to defend "[i]f the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, . . . regardless of the ultimate liability of the insured." *Brindeiro*, 2020 WL 2467742, at *3 (quoting *Found. Reserve Ins. Co.*, 1982-NMSC-038, ¶ 6, 642 P.2d at 605–06). To assess whether the insurer has a duty to defend, the court must consider "whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether [the insurer] can prove an action against the insured for damages." *Brindeiro*, 2020 WL 2467742, at *3 (quoting *Found. Reserve Ins. Co.*, 1982-NMSC-038, ¶ 6, 642 P.2d at 605). Whether the insurer has a duty to defend may often be decided as a matter of law based on such a comparison. *Acuity v. Astorga*, No. 20-CV-37-SWS/MLC, 2020 WL 8922213, at *6 (D.N.M. Apr. 16, 2020).

When a policy exclusion is at issue, "[i]n order for the court . . . to determine that no duty to defend exists, it must be able to say, as a matter of law, that all claims set forth in the complaint arose out of acts excluded from coverage under the policy." *Transamerica Ins. Grp. v. Hinkle-Keeran Grp.*, Inc., 53 F.3d 343 (10th Cir. 1995). However, "when the factual allegations in the complaint are ambiguous, the court in the collateral proceeding may not make factual findings to

11

resolve the ambiguity[.]" *Millers Mut. Fire Ins. Co. v. Montoya*, No. CIV 99-1325 MV, 2000 WL 36739555, at *4 (D.N.M. Nov. 13, 2000). Rather, when the complaint is ambiguous, "a determination of whether an exclusion relieves an insurer from a duty to defend must be made in the primary lawsuit, and not in an action for declaratory judgment, because it is a factual question." *Capitol Specialty Ins. Corp. v. Sw. Clubs, Inc.*, No. 12-01299 MCA/LAM, 2014 WL 11515028, at *11 (D.N.M. Mar. 31, 2014) (quoting *Lopez v. New Mexico Public School Insurance Authority*, 1994-NMSC-017, ¶ 11, 870 P.2d 745, 748).

Similarly, whether there is a duty to indemnify the insured for damages often "requires the resolution of material facts." *Acuity*, 2020 WL 8922213, at *5 (quoting *City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 2009-NMCA-081, ¶ 31, 213 P.3d 1146, 1155); *cf. Nautilus Ins. Co. v. Tierra Blanca Ranch*, No. 14-CV-988 MCA/SMV, 2015 WL 11643517, at *4 (D.N.M. Sept. 29, 2015) ("To the extent th[e] case may require the resolution of factual issues either to determine the duty to defend or the duty to indemnify, it is the underlying action in which the facts will be developed.").

Consistent with these principles, the fourth *Mhoon* factor may weigh against a stay as to the duty to defend and in favor of a stay as to the duty to indemnify, where the former may be decided as a matter of law based on the pleadings and the latter depends on determination of facts. *Farm Bureau Prop. & Cas. Ins. Co. v. Gomez*, No. 21-CV-527-BRB-GJF, 2021 WL 4521061, at *5 (D.N.M. Oct. 4, 2021) (noting that the differences between the duties to defend and indemnify "have a significant impact on the evaluation of the fourth *Mhoon* factor"). For example, in *Acuity*, the court denied a motion to stay as to the insurer's duty to defend because it could determine "whether the duty to defend exists solely by comparing the state court complaint to the insurance policies, without the need to decide significant disputed facts." 2020

WL 8922213, at *6. However, it also held that "there are multiple disputes of fact . . . that are better decided in the underlying state court proceeding," *id*. at *4, and, therefore, "[t]o ensure that [it did] not improperly infringe on the better-positioned state court, it may not be appropriate to decide the question of indemnity until the operative questions of fact are determined in the underlying state court proceeding." *Id*. at *6; *cf. Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, No. CIV 10-0137 JB/RHS, 2011 WL 1336523, at *12, 20 (D.N.M. Mar. 30, 2011) (denying a motion to dismiss or stay a declaratory judgment action because the Court could "decide whether [the insurer was] obligated to [the insureds] under the insurance policies . . . as a matter of law," but stating that its "decision is without prejudice to [the insureds] renewing their request to stay this proceedings if subsequent events demonstrate that the [c]ourt must address factual matters or legal issues that are before the state court").

    Here, Farm Bureau did not distinguish between the duty to defend and the duty to indemnify in its Complaint or in its responses to the Motions. (Docs. 1, 20, 21.) In the responses, Farm Bureau refers to "the coverage issues" generally, arguing, for example, that the "Court's exercise of jurisdiction and a decision on the coverage issue here would resolve the coverage issue between Farm Bureau and its insured prior to resolution of the underlying lawsuit." (Doc. 20 at 8, 11, 14; Doc. 21 at 3, 8.) Significantly, although Defendants seek dismissal or stay of all issues in the Complaint, Farm Bureau does not argue that the Court should proceed to determine Farm Bureau's duty to defend as a matter of law even if it declines to exercise jurisdiction over the issue of Farm Bureau's duty to indemnify.

    Moreover, Farm Bureau asserts in its Complaint both that the belly dump truck is not a covered auto under the Policy and that coverage is excluded under certain facts, relying on Policy provisions excluding coverage for (1) liability based on "[']bodily injury arising out of the

13

ownership, maintenance, use or entrustment of an auto that is owned, operated by or rented or loaned to any insured['] and (2) medical payments "to a person hired to do work for or on behalf of any insured[.]" (Doc. 1 at 9; 1-1 at 12.) Farm Bureau acknowledges that whether these exclusions apply depends on the relationships between OE, Mr. Mares, and Mr. Newnum, to wit, whether the belly dump truck was "owned, operated by or rented or loaned to" OE and whether OE "hired" Mr. Newnum. (Doc. 20 at 10.) Farm Bureau argues that, nevertheless, the Court should not dismiss this action because these facts are not at issue in the State Case. (*Id*. (stating that Mr. Szantho "has failed to show that the issues related to the exclusions . . . , i.e., whether the auto involved was owned, operated by or rented or loaned to any insured or whether Mr. Newnum was hired to work [for] or [on] behalf of Esparza . . . will impact any issues in the [State Case]").

On the contrary, these facts are germane to OE's tort liability in the State Case because whether Mr. Mares, Mr. Newnum, or Spades were OE's agents is disputed. *See* (Doc. 1-2 at 8 (alleging that OE is responsible for the actions of its agents); *Szantho v. MSCI, et al.*, Cause No. D-101-CV-2021-01136, OE's Answer, at 8 (asserting "the accident and alleged damages resulted from the negligence and conduct of other parties and non-party tortfeasors, for which [OE is] not liable"); *Bozza v. Gen. Adjustment Bureau*, 1985-NMCA-068, ¶ 13, 704 P.2d 454, 457 ("Whether an agency exists is ordinarily a question of fact[.]"); *cf. Cont'l W. Ins. Co. v. Robertson Tank Serv., Inc.*, No. CIV.A. 12-1087-KHV, 2013 WL 1447067, at *3 (D. Kan. Apr. 9, 2013) (holding that the fourth *Mhoon* factor supported a stay where "whether [the allegedly negligent party] was acting for [the insured] at the time of the accident is intertwined with a question raised in the state court petition—whether [the insured] is vicariously liable for his conduct").

The Court finds the determination of both the duty to defend and the duty to indemnify may depend in part on the applicability of the Policy exclusions, which in turn depends on facts at

issue in the State Case. *See Capitol Specialty Ins. Corp.*, 2014 WL 11515028, at *11 (stating that, if "the allegations of the complaint do not establish the inapplicability of an exclusion as a matter of law, 'a determination of whether an exclusion relieves an insurer from a duty to defend'" is a factual question (quoting *Lopez*, 1994-NMSC-017, ¶ 11, 870 P.2d at 748)). When, as here, both a declaratory judgment action and a state proceeding likely require determination of the same facts, a federal court's exercise of jurisdiction would likely cause friction between the federal and state courts. *See, e.g., Nationwide Affinity Ins. Co. of Am. v. Kalb*, No. 22-1103-DDC-KGG, 2022 WL 17735542, at *5–6 (D. Kan. Dec. 16, 2022) (holding that exercising jurisdiction over a declaratory judgment action would "cause friction between state and federal courts" because the insured's intent was relevant to both a state tort action and whether the policy at issue provided coverage); *Schering Corp. v. Griffo*, 872 F. Supp. 2d 1220, 1243 (D.N.M. 2012) (holding that "allowing this [declaratory judgment] case to go forward will create tension between the state and federal courts [because] a factual question [of] whether [the insured's employees] were acting within the course and scope of their employment" was before both courts). The fourth *Mhoon* factor weighs heavily against the exercise of federal jurisdiction.

**4. The Fifth *Mhoon* Factor Weighs Against Exercising Jurisdiction.**

Under the fifth *Mhoon* factor, the Court considers whether there is a better or more effective remedy available to the parties. 31 F.3d at 983. Farm Bureau argues that "[t]his declaratory judgment action provides the most efficient and comprehensive remedy to decide the coverage issues." (Doc. 20 at 11.) The Court disagrees that this factor weighs in favor of exercising jurisdiction.

First, the Court cannot confidently predict that it would be able to determine the facts necessary to resolve the coverage dispute more quickly than the state court can. Even if such a

15

prediction were possible, the "speediest solution might not be the best, or most efficient, or fairest means of managing the case as a whole" and the Court must consider "broader notions of judicial economy[.]" *Bristol W. Ins. Co. v. Salas*, 469 F. Supp. 3d 1175, 1179 (D.N.M. 2020). As discussed, facts bearing on both coverage and liability likely will be developed in the State Case, which is set for trial in September 2023. Hence, while it may be more efficient for Farm Bureau to proceed with this matter, the same is not true for Defendants. *See id.* at 1179–80 (noting that a declaratory judgment in the insurer's favor "dispenses with the matter in the quickest possible fashion for [the insurer]" but is not efficient for other parties). Given the progress of the State Case and because facts relevant to OE's liability in the State Case also bear on coverage and the applicability of the Policy exclusions, the Court finds that declining to exercise its jurisdiction at this time is more efficient and better serves the principles of fairness and judicial economy. *See Bristol W. Ins. Co.*, 469 F. Supp. 3d at 1179–80; *Spirit Com. Auto Risk Retention Grp.*, 2017 WL 5468670, at *7 ("There is no reason for this Court to take over an inquiry into factual issues that is already underway in the pending state court proceeding[.]"). Thus, the fifth *Mhoon* factor weighs against the exercise of jurisdiction.

In sum, the Court finds that the fourth and fifth *Mhoon* factors weigh against the exercise of federal jurisdiction and that the remaining factors weigh in favor or are neutral. Balancing these factors, the Court in its discretion will decline to exercise jurisdiction to issue a declaratory judgment at this time.

**C. The Court Will Stay the Case Rather Than Dismiss It.**

The Court further finds that this declaratory judgment action should be stayed rather than dismissed.[4] In *Mhoon*, the Court observed that a stay, rather than dismissal, would have been appropriate where, like here, there was a "material factual dispute," "ongoing state proceedings on the same subject," and "the duty to defend and coverage issues would remain to be decided in light of the outcome of the state case." 31 F.3d at 984. In addition, "[t]he [*Mhoon*] analysis involves some measure of prognostication" as to the scope of the state proceeding. *City of Las Cruces*, 289 F.3d at 1192. Given the uncertainty inherent in such predictions, "[a] stay will often be preferable" to dismissal. *Id.*; *see Essentia Ins. Co.,* 2014 WL 11512632, at *8 (declining to exercise jurisdiction under the *Mhoon* factors and staying, rather than dismissing, the declaratory judgment action). A stay will "allow the [C]ourt to quickly reconsider [its ruling] should [its] predictions regarding the scope of the state proceedings turn out to be erroneous . . . or [if] there exists a significant possibility of delay or other procedural inadequacy in the state proceedings." *City of Las Cruces*, 289 F.3d at 1192; *Essentia Ins. Co.*, 2014 WL 11512632, at *8.

**III.   CONCLUSION**

For the foregoing reasons, the Court concludes that, *Younger* does not require abstention, but weighing the *Mhoon* factors, it will not exercise its discretion to issue a declaratory judgment and will instead stay the matter at this time.

**IT IS THEREFORE ORDERED** that (1) the Szantho Motion to Dismiss (Doc. 6) is DENIED and (2) the OE Motion for Dismissal or Stay (Doc. 18) is GRANTED IN PART and DENIED IN PART. The OE Motion for Dismissal or Stay (Doc. 18) is DENIED to the extent it

---

[4] Farm Bureau and OE request a stay as an alternative to dismissal without prejudice. *See* (Doc. 20 at 14–15; Doc. 21 at 11; Doc. 26 at 9.) Mr. Szantho argues that dismissal, rather than a stay, is appropriate. (Doc. 24 at 4–5.)

17

seeks dismissal of the Complaint and GRANTED in all other respects. This matter is STAYED pending resolution of the State Case, or until further order of this Court.

**IT IS FURTHER ORDERED** that Farm Bureau shall file a notice within 14 days of the resolution of the State Case. The parties shall also file a status report on the state proceeding every six months.  The first status report is due **August 9, 2023**.

**IT IS SO ORDERED.**

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE